## BERNARD A. ECKHART ET AL.

### v.

## AGNES F. IRONS ET AL.

EASEMENT—BUILDING LINE.—The court is of opinion that upon the facts of this case, the alleged right of complainants, as appurtenant to their respective lots, to have the building line in question observed by every other lot owner, is too doubtful to justify a court of equity in awarding a permanent injunction against defendants; and that this doubt arises from the peculiar clause contained in the deeds from the original grantor, through which and whom each party to the suit derives title.

ERROR to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.    Opinion filed January 6, 1886.

This was a bill in equity by plaintiffs in error against defendants in error to restrain the latter from erecting a certain building on their own premises, upon the corner of Monroe and Laflin streets, in the city of Chicago, so as to transcend a certain building line along said Monroe street said to have been irrevocably fixed by an original plat or plan duly made by the owner, who laid out the subdivision. The plaintiffs, being severally owners of lots which abut upon said Monroe street, allege that by such building they would be injured as respects light, air and prospect. The case was heard upon pleadings and proofs before Hon. Murray F. Tuley, sitting as chancellor, who dismissed the bill for want of equity; and, upon that occasion, delivered the following opinion:

" Mathew Laflin, owning blocks 5, 6 and 9 in C. T. Sub. W. ¼ and W. ½ N. E. ¼, Sec. 17, 7, 39, caused the same to be subdivided and plat thereof to be recorded in the year 1863.

The north boundary of block 9 is Monroe street, the east boundary is Loomis street, and the west Laflin. The plat shows, on Monroe street, lots 1 to 18 fronting Monroe, and lot 55, the corner of Monroe and Loomis, fronting on Loomis, running back 125 feet to a 12-foot alley. Lot 18 is the corner lot of Monroe and Laflin.

Along the entire Monroe street front, twenty feet from the street line, there appears on the plat a dotted red line, un-der which is written these words: 'Line of front of building twenty feet from the street.' The figures 105 on side lines of lots 13 to 18, and 168.82 on side lines of lots 1 to 12, would appear at first glance to indicate the depth respectively of said lots from the street line to alley line, but a comparison of fig-ures indicating distances shows that those figures upon the lots indicate the distance from the dotted red line to the alley line of the lots. The land was then vacant and unoccupied. There is no reference to the dotted line in the acknowledg-ment.

Laflin conveyed the lots to different purchasers, and at the time the bill was filed nearly all the lots were occupied by substantial residences, all built back twenty feet from the Mon-roe street line.

The defendant having acquired through one Prescott, by divers mesne conveyances, the title to the two lots eighteen and seventeen, proceeded, against the objections of complain-ants, to erect thereon six brick and stone dwellings with their front on Laflin street, occupying with the north one the twenty feet strip lying between the dotted red line and Monroe street. The walls of said six houses being up and ready for the roof, the complainants filed this bill for an injunction against the erection of any building upon the twenty feet strip and for the removal of the one erected, and praying also that defend-ant may be compelled to front her buildings upon Monroe street.

The defendant denies that complainants have any easement as to said twenty feet strip, or right to the relief sought, and sets out the deed of Laflin to Prescott from whom defendants derive title, and avers, and it is admitted by the stipulation of parties, that Laflin sold from time to time, all the lots in the subdivision, to parties through whom complainants derived title, and conveyed the same by deeds exactly similar to the deed from Laflin to Prescott, except as to the names of parties, consideration and number of lots. The deed to Prescott, dated June 22, 1863, grants, bargains, sells, remises, releases,

aliens and confirms to Prescott, lots 17 and 18 (and other lots) in block 9, of the subdivision recorded in book of maps 161, page 75, being the map or plat in question, together with all and singular the hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion, etc., in usual form.    Then follows the following: 'Together with the exclusive use of the court yard between said lot and the street upon condition that said yard shall only be used as a front door yard, and that said party of the second part shall put no buildings upon said yard, except front door steps, nor erect any fence of unusual height, which shall obstruct the view of the neighborhood, nor create nor allow any nuisance which may be objectionable to the neighbors; and also upon condition that said party of the second part shall pay all taxes and assessments which shall be levied upon said court yard; it being the intention of the party of the first part in reserving said court yard to benefit and improve the neighborhood; said reservation to continue for fifteen years from the date of record of the plat of said subdivision, and after the expiration of said term the fee of said court yard shall vest in said party of the second part, his heirs or assigns, without any further conveyance.    But in case the conditions upon which the use of said court yard is granted to said party of the second part shall be violated, the party of the second part, his heirs, executors, administrators or assigns to forfeit and pay to said first party, his heirs, executors, administrators or assigns, $10 a day for each and every day such nuisance or obstruction shall remain thereon; said penalty recoverable before any justice of the peace or court of record.'

It will be perceived that the questions presented are both novel and interesting.

They must be decided upon principle, as no analogous case is to be found in the reported decisions.

1st.    What effect is to be given to the making and recording of such a plat ?

At common law a negative easement of this nature can only be acquired by a grant, commonly by deed or by prescription which pre-supposes a grant.    In this State it can not be acquired by prescription.    Guest v. Reynolds, 68 Ill. 478.

In order that there shall be a grant or deed there must be a grantee.

Laflin owned all the land, was the only party to the plat, and there was no grantee, unless the public could be so considered, as to all that portion dedicated to public use.

The definition of an easement—a right which the proprietor of one estate has to some profit, benefit or use out of or over the estate of another—forbids the idea that one can have an easement in his own land.

An owner of land may lay it off into town lots and publish a map thereof, without being concluded to any extent, but as soon as he sells with reference to such a map, other rights intervene.   City v. Dunn, 8 Ind. 378.

When one makes a deed with reference to a plat, the plat becomes a part of the deed, to the same extent as if incorporated into it.

A deed being made by Laflin of a lot, referring to the plat, would incorporate into the deed, the plat, showing a dotted red line across the front line of all lots bordering on Monroe street, with the words written upon that line, ' Line of front of buildings twenty feet from the street.'

The property all being vacant, the presumed intention of the grantor and grantee of such deed would be that the deed was made and received upon the understanding that all buildings should be erected with the front at the dotted red line, or at least not nearer than twenty feet from Monroe street.

The deed and plat would be held to constitute an implied agreement to that effect between the parties to the deed, binding them and all assigns with notice.

Upon the execution of such a deed to the first grantee there would be imposed upon the lot deeded, a burden or servitude in favor of all Laflin's remaining lots.

The burden or servitude would be that the twenty feet in front of the dotted line should forever be kept free from any obstruction or building which would mar or obstruct the view from all the other lots, or the light and air passing over the twenty feet space between the dotted red line and the street.

Eckhart v. Irons.

The right of each lot to have the twenty feet strip unobstructed would be a right in the nature of an easement over every other lot.

Rights of this nature are termed equitable easements, and in some of the authorities, *quasi* easements, and will be enforced in equity even if not enforceable at law upon the ground that a purchaser of ground with notice that his vendor or those through which he has derived title had made an express or implied agreement of this nature, it would be unconscientious and inequitable to permit him to discard or violate such agreement. He will not be allowed to appropriate property in contravention of the use or mode of enjoyment imposed upon it by his grantor. It is immaterial in such case whether there is any privity of estate, or of contract between the party opposing and the party seeking to appropriate the property. Parker v. Nightingale, 6 Allen, 341 ; Dorr v. Harraken, 101 Mass. 534 ; Washburn on Easements, p. 96 *et seq.*; Goddard on Easements, p. 23.

Although the cases found in the books almost without exception, and I believe without exception, arose upon express covenants or reservations in deeds, yet I am satisfied that the doctrine is alike applicable to necessarily implied agreements arising from deeds made with reference to plats containing what appear to be limitations or restrictions upon the use of the property. Baxter v. Arnold, 114 Mass. 577.

As no one acquired any interest in the property except from Laflin, it was competent for Laflin and his first grantees to change or modify any such implied agreement as to this twenty feet strip and the building line, as they might think proper.

It is of the very essence of this implied agreement, of the easement arising from the words on the dotted line on the plat—that the rights of each lot as to the others, should be mutual; that the rights of each lot as a dominant, and its burden as a servient estate, should be one and the same.

If by the agreement of the only parties then in interest— *i, e.*, Laflin and the grantee in the first deed—this easement arising from the dotted red line on the plat and the words

used in reference thereto was modified, and particularly if every successive grantee of Laflin's of the other lots received a similar deed which had a like effect as to this easement, it appears to me that the rights of the parties to this suit must depend upon the construction to be given to the peculiar clauses cited as contained in said deeds, construed, however, in connection with the recorded plat.

It will be noticed the clauses cited construe the plat as to what is a lot, and in effect declare that the twenty feet strip between the dotted line and the street is not embraced in the term 'lot.'

It is apparent that it was the intention of the parties to the deed that no present title to the land referred to as a 'court yard'—other than a qualified use thereof—should pass by the deed.

There is no land on the map designated *eo nomine*, as a 'court yard'—or yard, but it appears to be a necessary inference that the twenty feet strip is referred to and meant by the terms 'court yard' and 'yard.' The dotted line twenty feet from the street line, the figures on the side lines of the lot showing the distance of that line from the alley, and the reference to the 'court yard' as being between the lot and the street, are sufficient to sustain such an inference.

I have remarked that no present title to the twenty feet strip was intended to pass.

The title to it would not pass as an appurtenant to the lot deeded, as land itself can not pass as an appurtenant to other land.

The only rights in the twenty feet strip that would pass as an appurtenant, would be a right of way—a way of necessity implied from the location of the lot leaving the twenty feet strip between it and the street.

The deed grants, remises, etc., the lot with appurtenances, together with the exclusive use of the court yard between said lot and the street.

If this could be construed as a grant of the exclusive use, forever, of the court yard, it might be contended that the title thereto passed, as the exclusive use forever is all

there is of any property; under such a grant nothing remains in the grantor. But the fifteen years limitation considered with the absence of the word 'forever,' would prevent such a construction being given to this grant of the exclusive use.

The intention of the parties must be gathered from the entire deed. A recital may qualify general words. Allen v. Holton, 20 Pick. 463; L. & N. R. R. Co. v. Koelle, 104 Ill. 456.

The word 'condition' is used; the grant of the exclusive use of the court yard is declared to be upon condition that it be used only as a front door yard, etc. No provision, however, is made for a forfeiture upon breach of condition, and no one would contend that this was an estate upon condition.

A condition, however, will sometimes be construed as a covenant. It will be construed as a limitation or restriction on the use. Fuller v. Ames, 45 Vt. 400.

The clauses referred to contain this recital: 'It being the intention of the party of the first part (Laflin) in reserving said court yard to benefit and improve the neighborhood; said reservation to continue for fifteen years from the date of the record of the plat, etc.'

This is not strictly speaking a reservation, as all reservations must be to the grantor, and must be something coming out of the thing granted, as a right of the way over the land granted in favor of another piece of land of the grantors.

But the technical signification of the words will be ignored if the intent of the parties appear to require it.

Under the authority of Fuller v. Ames, *ante*, this so-called reservation or condition can be sustained as a restriction or limitation upon the mode of using the property, such restriction or limitation being intended for Laflin and his grantees and assigns who might become interested in the property platted.

It is a self-evident proposition that a grantor may impose such limitations or restrictions upon the mode of using the property granted, as he may deem proper, and the grantee may accept, if they are not opposed to public policy.

When such restrictions or limitations are imposed an equi-

table easement is created in favor of the property, to benefit which, such restrictions or limitations were imposed.

Such easement may be contained in a deed of the servient estate in favor of another estate, whether such other estate belongs to the grantor or not. No privity of estate or connection of title is necessary. All that is necessary is a clear manifestation of the intention of the person who is the source of title to subject one parcel of land to a restriction in its use for the benefit of another * * * and sufficient language to make the restriction permanent. Washburn on Real Prop., 396.

The intention to create a servitude or privilege, in its nature perpetual, must be manifested. Washburn on Easements, p. 100, citing 8 Allen, 173.

This latter case holds, in reference to easements by way of restriction upon use of property, that, 'To establish such *quasi* servitue or easement it must appear, either by express stipulation, or necessary and unavoidable implication, that the parties intended to impose a permanent restraint on the use or mode of occupation of their respective estates.'

The question remains—then, is it manifest, from the deed, that the restrictions and limitations as to the use of this court yard, were intended to be permanent?

Restrictions of this nature are not favored in the law. Guest v. Reynolds, 68 Ill. 478.

It is said natural rights are inherent in the land, but easements of this nature can only be created by the act of man.

The effect of the creation of an easement is to cause a suspension of natural rights during its existence.

The clause in the deed imposing the limitation or restriction declares that the reservation shall continue for fifteen years from the date of record of the plat, and after the expiration of said term the fee of said court yard shall vest in the party of the second part, his heirs and assigns, without any further conveyance.

'Said reservation,' it appears to me can only be construed to mean the reservation as to the mode of using the twenty feet strip, to wit: That it be used only as a front door yard, that no building or high fence be erected, or, in other words,

the restrictions on the use of the twenty feet strip.   They are limited, in my opinion, to fifteen years from the date of record of the plat.

Whether or not the fee passed by the deed, or passed at the end of fifteen years, or has not passed, because a fee can not be limited upon a grant of the use of property for fifteen years, is in my opinion immaterial.   The intent which equity regards rather than the form of words used, was that at the end of fifteen years from the date of record of the plat the grantee should become vested with a fee simple in this court yard.

A fee is the highest estate known to the law.   It imports absolute and untrammeled ownership.

I think the clear intent was that the restrictions were to cease at the end of fifteen years.

If there is any doubt as to the intent whether the restrictions were to cease then, or whether they were to be permanent, the existence of the doubt is to deny the existence of the easement or privilege.   All doubts must be resolved in favor of natural rights, and against restrictions thereon."

The complainants bring error to this court.

Messrs. ABBOTT, OLIVER & SHOWALTER, for plaintiffs in error ;   cited Gebhardt v. Reeves, 75 Ill. 301 ; Smith v. Heath, 102 Ill. 130 ; 1 Hilliard on Real Property, 79.

Mr. H. F. WHITE, for defendants in error.

PER CURIAM.   We are of opinion that, upon the undisputed facts, the alleged right of complainants, as appurtenant to their respective lots, to have the building line in question observed by every other lot owner, is too doubtful to justify a court of equity in awarding a permanent injunction against defendants ; and that this doubt arises from the peculiar clause contained in the deeds from Laflin, through which and whom, each party to the suit derives title.   We have, therefore, substantially upon the grounds and for the reasons set forth and given in the opinion of the chancellor decided to affirm his decree dismissing the bill for want of equity.

Decree affirmed.