MOORE *v.* KIMBALL.

1. COVENANTS—RECIPROCAL NEGATIVE EASEMENTS.

Where the owner of several lots situated near one another conveys one with express building restrictions applying thereto in favor of the land retained by the grantor, the servitude becomes mutual, and during the period of restraint, the owner of the lots retained may do nothing forbidden to the owner of the lot sold, and if the conveyance provides that the conditions are for the benefit of all present and of future owners of lots involved, an implied covenant arises out of the express restriction and creates what is termed a reciprocal negative easement.

2. SAME—EXTENT OF RESTRICTIONS ON LOTS RETAINED.

A grantor who conveys lots in a subdivision subject to restrictions in favor of lots retained restricts his own lots in the same way but such resultant restriction cannot be greater than that imposed by the grantor upon others.

3. DEEDS—INTENT.

The supposed intention of parties to a deed cannot overcome their express agreement.

4. COVENANTS—CONSTRUCTION OF RESTRICTIONS.

A restriction in a deed will not be enlarged or extended by construction even to accomplish what it may be thought the parties may have desired had a situation, which later developed, been foreseen by them at the time the restriction was written.

5. SAME—CONSTRUCTION OF RESTRICTIONS.

The parties to a deed will be confined to the language employed in writing a restriction where the language used is clear.

6. SAME—BUILDING RESTRICTION—DURATION.

A building restriction, unless perpetual, terminates with the expiration of the time limited for its duration.

7. SAME—CONSTRUCTION OF RESTRICTIONS.

Restrictions on the use of land will be construed strictly against those claiming to enforce them, and all doubts resolved in favor of the free use of the property.

8. CONTRACTS—AMBIGUITIES—PAROL EVIDENCE.

Where the language of an agreement is susceptible to more than one meaning, it is construed in the light of circumstances surrounding its execution, the relation of the parties, the nature of the subject matter, and the apparent purpose in making the agreement; but when the language of an agreement leaves no doubt as to its meaning, it must be considered without regard to extraneous facts.

9. SAME—COVENANTS—INTENT.

The intention of parties to an agreement is to be deduced from the language employed by them, the question being not what intention existed in the minds of the parties but what intention was expressed in the language used; and where unambiguous, the terms of a restrictive covenant are conclusive.

10. COVENANTS—RESIDENCE SUBDIVISION—EXPIRATION OF RESTRICTION —DENTAL AND MEDICAL OFFICE BUILDING.

Restrictive covenants in deeds to lots of a subdivision confining use to residence purposes and providing such restrictions should run with the land and continue in force for a period of 25 years from date of subdivision were unambiguous, terminated upon expiration of time limited for duration, and were not enforceable against grantees who were about to erect a building to be used for dental and medical offices after such expiration.

Appeal from Wayne; Callender (Sherman D.), J. Submitted October 3, 1939. (Docket No. 18, Calendar No. 40,656.) Decided December 19, 1939.

Bill by Edward S. Moore and others against Dr. Horton D. Kimball and wife and others to restrain the erection of a building as an alleged violation of restrictive covenants. From decree rendered, defendants appeal. Reversed.

*Harold R. Stevens* (*George O. Hansen, Devine, Kent & Devine,* and *David V. Martin,* of counsel), for plaintiffs.

*Butzel, Eaman, Long, Gust & Bills (Clifford W. Van Blarcum,* of counsel), for defendants.

McALLISTER, J.   Plaintiffs, home owners in Lakewood boulevard addition, a subdivision in the city of Detroit, filed suit to restrain defendant from erecting a building to be used for dental and medical offices on a vacant lot which he purchased in 1937 in the subdivision.   When the plat of the subdivision was recorded, December 23, 1913, in the office of the register of deeds for Wayne county, and the sale of lots therein commenced, the owners of the subdivision included in each of the deeds to lots purchased the following restrictive covenants:

"As a further consideration of this conveyance it is agreed between the parties hereto that no saloon or store shall be erected or maintained upon said premises, that no old building be moved or placed thereon; that nothing but one dwelling house and the necessary outbuildings shall be erected on each lot, said dwelling house is to cost not less than $5,000 and is to be placed not less than 30 feet back from the front line and the south line of said house shall be placed within 4 feet of the south line of said lot. No cement block buildings shall be erected except with the written consent of the first party hereto. All plans of buildings shall be first submitted to the first party hereto for approval.

"*The above restrictions shall run with the land and shall continue in force for a period of 25 years from the date of the subdivision of said land,* and it is agreed between the parties hereto, *that similar restrictions shall be contained in all other conveyances of land situated on said Lakewood boulevard in said subdivision.*"

Since the land was subdivided, approximately 250 homes have been constructed on Lakewood boulevard in compliance with the restrictions as above set forth.

Defendant purchased his lot in December, 1937. The 25-year restriction expired in 1938. Thereafter the defendant sought to erect the building in question. Plaintiffs claim that the lot of defendant is burdened with a reciprocal negative easement, restricting the owner of such property to compliance with the conditions set forth in the deeds as aforementioned. Defendant contends that such restrictions expired at the end of the 25-year period and that his lot is no longer subject to them. On the trial, the court found in accordance with plaintiffs' contention that defendant's property was burdened with a reciprocal negative easement; and granted the issuance of an injunction to restrain the proposed building. From such decree defendant appeals.

It is the claim of plaintiffs that the common owner of lots in the subdivision created a general plan of development of a district, limited to the use of property in question for single dwelling houses; that the restrictive covenants contained in the deeds were evidence of the carrying out of such a plan; that upon the expiration of the 25 years, the property had become a residential district in accordance with the plan; and because of notice on the part of defendant, his property was subject to a reciprocal negative easement, restricting the land thereafter to conformity with the plan.

Reciprocal negative easements are discussed in 14 Am. Jur. p. 612, §§ 199, 200, as follows:

"Under certain circumstances a restrictive agreement is implied. The view has been taken that where the owner of two or more lots situated near one another conveys one of the lots with express building restrictions applying thereto in favor of the land retained by the grantor, the servitude becomes mutual, and during the period of restraint,

the owner of the lots retained may do nothing that is forbidden to the owner of the lot sold. Such an implied covenant arises where the deed of conveyance provides that the conditions are for the benefit of all present and of future owners of lots in the subdivision. Such a restriction is said to create a reciprocal negative easement, which is enforceable against the grantor or a subsequent purchaser of the lot from him with notice, actual or constructive. The general view, however, is that in the absence of a permanent building scheme there are no implied restrictions upon the remaining lots. * * *

"Where a permanent building scheme is established for the benefit of the purchasers of various lots in the tract, the parts of the tract remaining in the hands of the vendor or subsequently sold are bound to the observance of the restrictive covenants. It is not necessary, where there is a general building plan or scheme covering a tract of land, that the restriction be contained in the deed to each lot. If the general plan has been maintained from its inception, has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se*."

Such restrictions by implication have been considered by this court on numerous occasions. In *Sanborn* v. *McLean*, 233 Mich. 227 (60 A. L. R. 1212), it was held that where the owner of two or more lots situated near one another conveys one of the lots with express building restrictions applying thereto in favor of the land retained by the grantor "the owner of the lot or lots retained can do nothing forbidden to the owner of the lot sold. For want of a better descriptive term this is styled a reciprocal negative easement. It runs with the land sold by virtue of express fastening and abides with the land retained until loosened by expiration of its period of service or by events working its destruction."

In *Nerrerter* v. *Little,* 258 Mich. 462, it was held that a vendee had sufficient notice of a reciprocal easement if the character of the neighborhood and the houses built therein were "in accordance with building restrictions that were strictly followed." The implied restriction, therefore, arises out of the express restriction.

But it is claimed by appellees that while the period of the express restrictions has expired, nevertheless a general plan was created by the restrictions, and that as a result thereof, because of compliance of the other property owners with the plan, a reciprocal negative easement has attached to all the lots in the subdivision, continuing beyond the period of the express restrictions, for the purpose of maintaining the residential character of the neighborhood.

The property retained by a grantor, after restricting other property, is restricted in the same way. Such resultant restriction cannot be greater than that imposed by the grantor upon others. In the present case such restrictions provided, so far as is pertinent here, that only single dwelling houses should be erected upon the lots and that "the above restrictions shall run with the land and shall continue in force for a period of 25 years from the date of the subdivision." It is claimed that the parties intended that the expression of the 25-year period of restriction was for the purpose of building up a residential neighborhood; that the period was defined merely in order to terminate the responsibility of the subdividers "in protecting the proper development of the street in the way it was originally laid out;" that it was contemplated that there would be no changes after such period, and that the "general common plan was to keep it as a residence street permanently."

The supposed intention of the parties cannot overcome their express agreement, 18 C. J. p. 254; and

a restriction will not be enlarged or extended by construction even to accomplish what it may be thought the parties may have desired had a situation, which later developed, been foreseen by them at the time the restriction was written. *Davidson* v. *Sohier,* 220 Mass. 270 (107 N. E. 958). Where the language of the restriction is clear, the parties will be confined to the language which they employed. A building restriction, unless perpetual, terminates with the expiration of the time limited for its duration. *Welch* v. *Austin,* 187 Mass. 256 (72 N. E. 972, 68 L. R. A. 189); *Eckhart* v. *Irons,* 18 Ill. App. 173.

It is the general rule that restrictions will be construed strictly against those claiming to enforce them and all doubts resolved in favor of the free use of the property. *Casterton* v. *Plotkin,* 188 Mich. 333; *Brown* v. *Hojnacki,* 270 Mich. 557 (97 A. L. R. 621). Where the language of an agreement is susceptible to more than one meaning, it is construed in the light of circumstances surrounding its execution, the relation of the parties, the nature of the subject matter, and the apparent purpose in making the agreement; but these considerations do not apply when the language of the agreement leaves no doubt as to its meaning. In such a case, it must be considered without regard to extraneous facts. See 13 C. J. p. 544. The intention of the parties is to be deduced from the language employed by them. The question is not what intention existed in the minds of the parties, but what intention was expressed in the language used; and where unambiguous, the terms of the restrictions are conclusive.

Upon a review of the record we are of the opinion that the restrictions were clear and unambiguous. They terminated upon expiration of the time provided for their duration. They cannot be enlarged

beyond their plain language to encompass that which was not expressed; and they cannot be extended by evidence of what the parties intended by such restrictions; but are conclusive on their face. As was said in a similar instance in *Boston Baptist Social Union* v. *Boston University,* 183 Mass. 202 (66 N. E. 714), "if it had been the intention of the grantor to put a restriction upon the land for all time, it would have been easy to say so;" and in *Tabern* v. *Gates,* 231 Mich. 581, in a controversy involving building restrictions, the court remarked, in answer to one of the contentions made, that "it would have been sufficient to have inserted a general restriction for residential uses." The supposed intention of parties cannot overcome the express language of the restrictions in this case.

From the foregoing, it is our conclusion that no claimed restriction is enforceable against defendant since the restrictive period has expired and no negative reciprocal easement runs against defendants' premises after such time.

The decree of the circuit court is, therefore, vacated, the injunction heretofore issued, set aside, and the bill of complaint dismissed, with costs to defendants.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER and NORTH, JJ., concurred.