*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER M. REDDING,

        Plaintiff-Appellant,

v

TINA BLODGETT, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., and
NATIONSTAR MORTGAGE, LLC,

        Defendants-Appellees,

and

CHEMICAL BANK,

        Defendant.

UNPUBLISHED
April 1, 2021

No. 349573
Charlevoix Circuit Court
LC No. 18-044426-CH

Before: RONAYNE KRAUSE, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Plaintiff, Christopher Redding, appeals by right the trial court's order granting summary disposition in favor of defendants Tina Blodgett; Mortgage Electronic Registration Systems, Inc (MERS); and Nationstar Mortgage, LLC (Nationstar). This matter arises out of a right-of-first-refusal agreement entered into between plaintiff and a prior owner of Blodgett's property. During one of the sales of the property in the interim, plaintiff was offered, and expressly declined to exercise, his right of first refusal. The persons who purchased the property upon plaintiff's declination then sold the property to Blodgett. Five years later, plaintiff commenced the instant action seeking to enforce his rights under the right-of-first-refusal agreement. The trial court concluded that plaintiff's rights had been extinguished by his decision not to exercise those rights. We affirm.

## I. BACKGROUND

In 2000, plaintiff entered into a right-of-first-refusal agreement with Elba A. Scott regarding certain real property adjacent to plaintiff's property. In relevant part, the agreement provided as follows:

The following is a recital of the facts underlying this Agreement:

A. Scott is the owner of a certain parcel of property located in the Township of Charlevoix, Charlevoix County, Michigan, which property is more particularly is [sic] the attached Exhibit A (the "Subject Property".)

B. Scott is also the owner of a certain parcel of property which is located adjacent to and easterly of the Subject Property, which property is more particularly in the attached Exhibit B (the "Scott Property".)

C. Scott desires to sell the Subject Property to Redding and Redding desires to purchase the Subject Property from Scott.

D. In order to induce Redding to purchase the Subject Property, Scott has agreed to grant a Right of First Refusal to Redding to purchase the Scott Property at some time in the future.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements contained in this Agreement, the parties hereto agree as follows:

1. Scott hereby grants to Redding a Right of First Refusal to purchase the Scott Property, upon the terms and conditions set forth below.

2. Within ten (10) days of receiving a bona fide written offer from a third party to purchase all or any portion of the Scott Property, which has not had a single family residence built by Scott, Scott shall provide a written copy of said offer to Redding. Redding shall then have forty-eight (48) hours after receipt of the third party offer to agree to purchase all or any portion of the Scott property upon the identical terms and conditions as set forth in the third party offer. Redding shall notify Scott of his intentions, in writing, which notification shall be received by Scott within the forty-eight (48) hour time period set forth above. In the event Scott does not receive written notification from Redding that Redding intends to exercise this Right of First Refusal within the time period set forth above, Scott may proceed to sell all or a portion of the Scott Property to the third party upon the terms and conditions set forth in the third party offer.

\* \* \*

4. Scott may split or otherwise divide the Scott Property. In that event, an offer to purchase a portion of the Scott Property shall be subject to the terms of this Agreement.

5. In the event Scott builds a house on the Scott property or any portion thereof, then this Agreement shall be null and void as to such portion as has been built upon but shall continue for the balanceof [sic] teh [sic] land, whether or not it has been legally split at the time of construction.

\* \* \*

7. If Scott enters into an assignment, sale, transfer, conveyance, lease with a term . . . in excess of one (1) year or a lease with an option to purchase in conflict with this Right of First Refusal, Redding may, at his option, have a court of competent jurisdiction declare this Agreement breached and order that the assignment, sale, transfer, conveyance, or lease is void. This provision shall not be construed to prevent specific performance of this Right of First Refusal or any of its terms by either party.

\* \* \*

12. This Agreement shall enure to the benefit of and be binding upon the parties hereto, their respective heirs, administrators, executors, representatives, successors and/or assigns.

The right of first refusal was recorded in Charlevoix County on May 10, 2000.

The Scott Property was split into three separate lots, of which only Parcel 3 remains at issue.[1] In 2008, the Scott Property was conveyed by quitclaim deed to Charlevoix State Bank in lieu of a foreclosure. There is no dispute this conveyance was not a bona fide offer that would have triggered plaintiff's rights under the agreement. Subsequently, Charlevoix State Bank conveyed Parcels 1 and 3 to John and Alison Peterman. Prior to the conveyance of Parcel 3, plaintiff was notified in writing pursuant to the agreement, and plaintiff declined to exercise his right of first refusal to purchase Parcel 3. In 2013, the Petermans conveyed Parcels 1 and 3 Blodgett. To finance the purchase, Blodgett obtained a loan that was secured by a mortgage held by MERS and serviced Nationstar. This deed and mortgage were recorded on April 2, 2013.

More than five years later, on July 3, 2018, plaintiff initiated this action in a three-count complaint for breach of the right-of-first-refusal agreement, quiet title, and declaratory relief.[2] Plaintiff alleged that Blodgett obtained the Scott property from the Petermans without plaintiff first being afforded his right of first refusal that was provided by the agreement. Plaintiff alleged that both the Petermans and Blodgett were bound by the agreement as successors in interest to the

---

[1] A house was built on Parcel 1, terminating the agreement as to that parcel pursuant to ¶ 5, and it appears that Parcel 2 was never part of any relevant conveyance or attempted conveyance.

[2] Plaintiff's original complaint named Blodgett and Chemical Bank as defendants. Plaintiff filed a first amended complaint on December 12, 2018, naming Blodgett, MERS, and Nationstar as defendants. Chemical Bank was not named as a defendant in the first amended complaint and is not a participant in this appeal. The first amended complaint was otherwise materially similar to the original complaint. The Petermans were not named as defendants.

Scott Property. Plaintiff further alleged that Blodgett had listed the property for sale and intended to sell it without affording plaintiff his right of first refusal under the agreement.

Defendants moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) and MCR 2.116(C)(10) (no genuine issue of material fact), arguing that plaintiff's right of first refusal had been fully extinguished by 2010. Specifically, defendants maintained (1) that the right of first refusal had been extinguished with respect to Parcel 1 pursuant to the terms of the right-of-first-refusal agreement because a house had been built on that parcel and (2) that the right of first refusal was extinguished with respect to Parcel 3 in 2010 because plaintiff declined to exercise his right at that time when Parcel 3 was sold to the Petermans.

Plaintiff conceded that his right to first refusal had been extinguished under the terms of the May 4, 2000 agreement with respect to Parcel 1 because a house had been built on that parcel. However, he maintained that his right of first refusal was still valid as to Parcel 3, because the agreement provided that it was binding on successors and assigns. Plaintiff contended that his decision not to exercise his right of first refusal when the property was sold to the Petermans only affected that specific sale; and that he retained that right of first refusal for any future conveyances. Thus, plaintiff claimed the right of first refusal agreement was breached when Parcel 3 was conveyed to Blodgett without first affording plaintiff his right of first refusal. Plaintiff further argued that because the agreement was a matter of public record, defendants had a duty to discover and honor plaintiff's right at the time that Blodgett purchased (and simultaneously obtained a mortgage on) the property. Finally, plaintiff maintained that Blodgett was obligated to offer first refusal to him in the event she attempted to sell Parcel 3. Plaintiff argued that there was no genuine issue of material fact and he was entitled to summary disposition under MCR 2.116(I)(2).

The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), stating that there was "no dispute as to the facts in this case." The court seemingly concluded that plaintiff's right of first refusal had been extinguished after the conveyance to the Petermans because at that time, the conditions triggered plaintiff's option to purchase the property and he failed to exercise that option. The trial court explained as follows:

> I do believe legally, that a right of first refusal does transmute into an option when the conditions precedent are met under the terms of the right of first refusal. I'm aware of—fully aware of the fact that the Michigan Supreme Court may not have ruled to that effect yet—but I am—I do think it's a matter of, you know, contract law treatise and real estate law generally understood law.

The trial court denied plaintiff's motion for reconsideration. This appeal followed.

## II. STANDARDS OF REVIEW

An issue is preserved for appellate review if it is raised in the trial court and pursued on appeal although appellate consideration may be inappropriate if the record lacks the necessary factual development. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994); *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005). This Court reviews a trial court's summary disposition ruling de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition should be granted

under MCR 2.116(C)(8) only if the claim is legally insufficient and could not justify recovery even if all well-pleaded factual allegations in the complaint are true. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). A motion for summary disposition should be granted under MCR 2.116(C)(10) only if the entirety of the evidence, when viewed in the light most favorable to the nonmoving party, leaves no room for reasonable minds to disagree as to any material fact. *Id*. at 160. At the summary disposition stage, the evidence need not be admissible in form, although it must be admissible in substance, and a mere promise to produce evidence at trial is insufficient. *Maiden*, 461 Mich at 121, 123-124 nn 5-6. Issues involving matters of contract interpretation present questions of law that we review de novo. *In re Smith Trust* (*Smith II*), 480 Mich 19, 24; 745 NW2d 754 (2008). "When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

## III. THE 2013 SALE OF THE PROPERTY

We note that although plaintiff contended at oral argument that he was not waiving any claim that his right of first refusal was violated in 2013, he admitted that Blodgett did not become a "successor" until she purchased the property, and plaintiff never named the Petermans as defendants in this matter. Presuming plaintiff's right of first refusal *was* violated in 2013, as we will discuss, the right is contractual, so we doubt it could possibly have been violated by any parties to this action, notwithstanding the theoretical right under ¶ 7 of the agreement to have a conveyance declared void. Furthermore, although we do not purport to render a decision regarding the equitable doctrine of laches, we note that plaintiff is an adjoining neighbor to the property at issue and waited five years before raising any objection to the 2013 conveyance. Thus, defendants' laches argument is, at a minimum, not unreasonable. Nevertheless, plaintiff assured us at oral argument that, in this matter, he is only suing to vindicate his right of first refusal as to a future sale by Blodgett. Thus, plaintiff, by tacit implication, has conceded the validity of Blodgett's present ownership of the property, at least for purposes of this action. Therefore, we need not and do not reach any holding as to the validity of the 2013 conveyance.

## IV. RIGHTS OF FIRST REFUSAL GENERALLY

"A right of first refusal, or preemptive right, is a conditional option to purchase dependent on the landowner's desire to sell." *Randolph v Reisig*, 272 Mich App 331, 336; 727 NW2d 388 (2006). An option is a contractual agreement to keep an offer open for a certain time. *Smith II*, 480 Mich at 25-26. A deed is also a contract. *Negaunee Iron Co v Iron Cliffs Co*, 134 Mich 264, 279; 96 NW2d 468 (1903). A right of first refusal therefore creates no interest in land. *Randolph*, 272 Mich App at 338-339. Indeed, a right of first refusal confers no guarantee that its holder will ever have an immediate "true" right. See *In re Smith Trust* (*Smith I*), 274 Mich App 283, 278; 731 NW2d 810 (2007), aff'd by *Smith II*,[3] quoting 17 CJS, Contracts, § 56, p 503. Such a preemptive right only arises "only if the optioners desire to sell" the property, and because "its primary purpose is to enable a particular person to buy, not to prevent any one from selling," it is not considered a

---

[3] In *Smith II*, our Supreme Court affirmed *Smith I* on largely alternative grounds, but the majority did not criticize or otherwise overturn any portion of this Court's opinion in *Smith I*.

restraint on alienation. *Lantis v Cook*, 342 Mich 347, 357; 69 NW2d 849 (1955) (quotation and emphasis omitted).

Preemptive rights are presumed to be personal to the parties, unless the parties have specifically included language making the right descendible. *Old Mission Peninsula Sch Dist v French*, 362 Mich 546, 549-551; 107 NW2d 758 (1961); *Great Lakes Gas Transmission Co v MacDonald*, 193 Mich App 71, 575; 485 NW2d 129 (1992). Unambiguous contractual language must be enforced as written, but if the language is ambiguous, the parties' intentions may be discerned by resort to extrinsic evidence. *Smith II*, 480 Mich at 24. "It thus becomes apparent that each case depends on the wording of the provision relied upon, and the circumstances of the case." *Laevin v St Vincent De Paul Society of Grand Rapids*, 323 Mich 607, 613; 36 NW2d 163 (1949). Nevertheless, in the event judicial construction is appropriate in a particular case, rights of first refusal should be construed narrowly and in such a way as to maximize the free use of the property. *Moore v Kimball*, 291 Mich 455, 461; 289 NW 213 (1939); *LaRose Market, Inc v Sylvan Center, Inc*, 209 Mich App 201, 205; 530 NW2d 505 (1995).

V.  PLAINTIFF'S DECISION NOT TO EXERCISE HIS RIGHT OF FIRST REFUSAL

As an initial matter, the agreement is clearly descendible in part, although the exact nature of that descendibility is less clear. The agreement provides, in part:

12.  This Agreement shall enure to the benefit of and be binding upon the parties hereto, their respective heirs, administrators, executors, representatives, successors and/or assigns.

The word "successor" is not defined in the agreement. "A dictionary may be consulted to ascertain the plain and ordinary meaning of words or phrases used in the contract." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). However, such words also "must be construed in context and read in light of the contract as a whole." *Id*. at 153. "It is elementary that a contract must be construed so as to effectuate the intent of the parties when it was made; and, to ascertain the intent of the parties, a contract should be construed in the light of the circumstances existing at the time it was made." *Kunzie v Nibbelink*, 199 Mich 308, 314; 165 NW 722 (1917). Thus, courts should not apply a dictionary definition that would not fit the context of the contract or would require forced construction. *Sturgis Nat'l Bank v Maryland Cas Co*, 252 Mich 426, 429-431; 233 NW2d 367 (1930).

*Black's Law Dictionary* defines "successor" generally to mean "[s]omeone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor." *Black's Law Dictionary* (11th ed). Similarly, "successor" is more colloquially defined as "someone or something that comes after another person or thing" or "someone or something that follows and takes the job, place, or position that was held by another." *Cambridge Dictionary*.[4] Thus, the word "successor," standing alone, would seem to broadly encompass any

---

[4] See < https://dictionary.cambridge.org/us/dictionary/english/successor > (accessed February 17, 2021).

person who later holds title to the property, such as Blodgett. However, the circumstances and the rest of the contract show that such an expansive interpretation was not intended.

The recitals at the commencement of the agreement specifically refer to plaintiff and Scott, personally. Plaintiff argues that "Scott" was merely a substitute term for "property owner." However, such a substitution would necessary apply to plaintiff as well, because the descendibility clause refers to both the benefit and the obligation being passed on. This is not implausible per se. Plaintiff explained that, originally, Scott owned two parcels of property; plaintiff purchased one of them and asked for the right of first refusal as to the adjoining parcel. It would make sense for a right of first refusal to be drafted such that it runs with the land. However, nothing in the contract suggests that it was intended to run with the land. Rather, the phrasing of the descendibility clause, and its references to heirs, administrators, executors, representatives, and assigns indicates that the right and the burden were intended to be *personal*, and any descendibility would therefore also devolve from the person rather than the property.

Furthermore, the principle of *ejusdem generis*, which is more commonly used as a tool for statutory interpretation, may be applied in the context of contracts. See *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 63-64; 903 NW2d 197 (2017); *Hawkins v Great Western Ry Co*, 17 Mich 57, 62-63 (1868). The doctrine provides that where a number of specific terms are set forth along with a more general term, the general term, in context, will be understood as including "only things of the same kind, class, character, or nature as those specifically enumerated." *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718-719; 629 NW2d 915 (2001). Here, the first four classes of persons upon whom the benefits and burdens of the agreement will descend are "heirs, administrators, executors, [and] representatives." Importantly, these are all classes of persons who would step into another person's shoes by operation of law—and thus, without any kind of bona fide offer to purchase. Similarly, an "assign" also implies a lack of a bona fide offer to purchase; for example, a right of first refusal premised on the sale or purchase of property is not triggered by making a gift of the property. See *Ridinger v Ryskamp*, 369 Mich 15; 118 NW2d 689 (1962). When the term "successors and/or assigns" is read in context, it appears to mean something narrower than anybody who ever owns property once owned by either Scott or plaintiff. Rather, it appears to pertain to someone who has acquired an interest directly from either Scott or plaintiff by some manner other than a bona fide purchase of property. In other words, the agreement will survive a transfer of property *other than* a bona fide purchase.

The above backdrop frames the central inquiry in this matter, which is the effect of plaintiff's decision not to exercise his right of first refusal at the time Charlevoix State Bank conveyed the property to the Petermans.[5] A right of first refusal is "transmuted" into an option upon receipt of a bona fide offer to purchase. *Smith I*, 274 Mich App at 287-288. An option that is not exercised will simply irrevocably expire. See *Blackwell Ford, Inc v Calhoun*, 219 Mich App 203, 212; 555 NW2d 856 (1996). Furthermore, " '[t]he right of first refusal may be extinguished where the offer is declined by the holder, or where the third-party offer is not matched.' " *Smith*

---

[5] The agreement clearly remained binding upon Charlevoix State Bank, because the transfer of property from Scott to the Bank was not a bona fide purchase; rather, it was treated as the functional equivalent of a foreclosure.

*I*, 274 Mich App at 287, quoting 17 CJS, Contracts, § 56, p 503. We have found no Michigan case law specifically exploring whether in the absence of specific contractual language, such extinguishment applies only to one particular transaction or as to the right of first refusal in its entirety.

This Court has held that where a right of first refusal lacks a specific limitation on how long it will remain valid, the courts will eventually limit such rights to a "reasonable period." *Randolph*, 272 Mich App at 336-337. We therefore do not share defendants' concern that a right of first refusal could last forever, at least in the absence of unambiguous contractual language to the contrary. However, *Randolph* involved a right of first refusal that explicitly ran with the land, unlike the agreement here. See *id*. at 334, 337. Thus, *Randolph* does not address the legal outcome if the holder of a right of first refusal that does not run with the land affirmatively declines to exercise that right. However, as noted, in the absence of language to the contrary, Michigan favors construing such rights in favor of greater, rather than lesser, freedom to use or dispose of property. *Moore*, 291 Mich at 461. That preference would be consistent with 17 CJS, Contracts, § 56, p 503, as quoted by *Smith I*, indicating that the right will be extinguished. Accordingly, the better construction would seem to be that unless the contract specifies otherwise, the holder of a right of first refusal will extinguish that right by affirmatively declining to exercise it, presuming the right became vested and the holder had a proper opportunity to exercise it.

Ultimately, we conclude that the descendibility provision of the agreement only applies where the property was personally sold by Scott or where the property was sold by a person who acquired the property from Scott in a transaction other than a bona fide purchase. The agreement therefore cannot be construed as running with the land or otherwise surviving plaintiff's decision to affirmatively decline to exercise his right of first refusal. The trial court properly granted summary disposition in defendants' favor, and so we need not consider defendants' alternative argument based on the doctrine of laches.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey