RANDOLPH v REISIG

Docket No. 259943. Submitted September 6, 2006, at Grand Rapids. Decided October 3, 2006, at 9:00 a.m. Leave to appeal denied, 477 Mich 982.

E. Richard and Betty J. Randolph brought an action in the Newaygo Circuit Court against Clarence E. and Monica Reisig. The Randolphs and the Reisigs owned adjoining lakefront properties that were subject to a property owners' association agreement providing, among other things, for a right of first refusal by adjoining landowners. Following notice that the Reisigs intended to sell their property to William and Debra Hinkley, the plaintiffs had attempted to exercise their right of first refusal and brought this action when the Reisigs refused to sell them the property. The court, Terrence R. Thomas, J., granted the Reisigs summary disposition, concluding that a racially restrictive covenant in the agreement rendered the right of first refusal unenforceable. The Court of Appeals, MARKEY, P.J., and CAVANAGH and SAAD, JJ., reversed and remanded for further proceedings in an unpublished opinion per curiam, issued September 2, 2003 (Docket No. 239666), ruling that, absent further evidence demonstrating that the right of first refusal was intended to circumvent prohibitions against the enforcement of racially restrictive covenants, the latter could be severed without undermining the enforceability of the former. Because the Reisigs had conveyed the property to the Hinkleys during the lawsuit's course, the plaintiffs added the Hinkleys as defendants on remand. The court, Anthony A. Monton, J., granted the defendants summary disposition, ruling that (1) if the rule against perpetuities applied to the agreement, the right of first refusal was void under it and (2) if the rule against perpetuities did not apply, the right of first refusal could only be in existence for a definite period and consequently had since expired. The plaintiffs appealed.

The Court of Appeals *held*:

1. A right of first refusal must contain a definite time for performance. In the absence of a specific time, a court will construe an agreement granting such a right to be valid for a reasonable period. The unambiguous language of this agreement

stated that its covenants, including the right of first refusal, would continue until January 1, 1960, and then be extended automatically for successive ten-year periods unless a majority of the property owners agreed to change the covenants. There is nothing indefinite about the initial period or the successive periods. The trial court erred by concluding that the renewal provision in the agreement transformed the agreement into one of indefinite duration that was then subject to a reasonableness determination and limitation of its duration by the court.

2. The trial court also erred by determining that the rule against perpetuities applied to the right of first refusal. An option contract, in which the promisee holds the power to purchase the property at will for a specified price during a specified period, does not create an interest in land. The promisee in an agreement providing a right of first refusal cannot exercise the right to purchase property unless the seller decides to sell to a different buyer. Because a right of first refusal gives the holder fewer rights than an option, a right of first refusal also does not create an interest in land and is not limited by the common-law rule against perpetuities.

Reversed and remanded.

PERPETUITIES — CREATION OF INTEREST IN LAND — RIGHTS OF FIRST REFUSAL TO BUY REAL PROPERTY.

A right of first refusal to purchase real property does not create an interest in land and is not subject to the common-law rule against perpetuities (MCL 554.511).

*Warner Norcross & Judd LLP* (by *John G. Cameron, Jr.; John J. Bursch*; and *Daniel P. Lennington*) for E. Richard and Betty J. Randolph.

*Timmis & Inman PLLC* (by *Joseph M. Xuereb*) for Clarence E. and Monica Reisig.

Before: SAWYER, P.J., and FITZGERALD and O'CONNELL, JJ.

PER CURIAM. Plaintiffs appeal as of right the order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) in this dispute arising

out of the interpretation of covenants contained in a property owners' association agreement. We reverse and remand.

We review de novo a trial court's decision on a motion for summary disposition. A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of a claim. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 30; 651 NW2d 188 (2002). In reviewing a motion for summary disposition under MCR 2.116(C)(10), the deciding court considers all the evidence, affidavits, pleadings, admissions, and other information available in the record in the light most favorable to the nonmoving party. *Id.* at 30-31. The nonmoving party must present more than mere allegations in order to demonstrate a genuine issue of material fact for resolution at trial. Summary disposition is properly granted if no factual dispute exists, thereby entitling the moving party to judgment as a matter of law. *Id.* at 31.

Additionally, we review de novo the proper interpretation of a contract. *Grand Trunk W R, Inc v Auto Warehousing Co*, 262 Mich App 345, 350; 686 NW2d 756 (2004). In interpreting a contract, our obligation is to determine the intent of the parties. *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). We examine the language in the contract and give the words their plain and ordinary meaning. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law," and "[i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Quality Products, supra* at 375.

In 1948, property owners on Houseman Lake created a property owners' association charged with maintaining the value and resources of property surrounding the

lake. On October 15, 1949, these property owners entered into an agreement providing, in part:

> Whereas the above described parties [11 individuals] are the owners of all the land surrounding Houseman Lake which is located in Lilley Township, Newaygo County, Michigan, and are desirous of placing certain restrictions, conditions, covenants, limitations, reservations and easements on the above described land for the protection of the above described owners and any and all future purchasers of land in said area:

> Now, therefore, it is hereby mutually agreed by and between and among the above named parties that the following restrictions, conditions, covenants, limitations, reservations, and easements shall be binding upon the above described owners of the land in the above described area, their heirs, successors, representatives and assigns, and said restrictions, conditions, covenants, limitations, reservations and easements shall run with the land, as follows:

> \* \* \*

> D. That any party or parties owning any land covered by this agreement and who desire to sell their property and to discontinue their summer residence on such property, before entering into any binding agreement to sell any of said property to any person or persons not an owner of and summer resident on land covered by this agreement, will notify in writing all the then owners of the land covered by this agreement and directly bordering upon the parcel of land which it is thus desired to sell, of their intention to sell such property and shall give the parties so notified, or any of them, the first option to buy the said property for a period of fifteen (15) days from the date of mailing such notification. In the event a price and terms of sale have been offered for such property by any person or persons not an owner of and summer resident on land covered by this agreement, such notification shall contain the price and terms of sale offered by the proposed purchaser and such

notification shall constitute an option to those notified, or any of them, to purchase the said land for the same price and on the same terms.

E. The parties hereto individually bind themselves to sell or lease their respective properties to members of the Caucasian race only.

F. These covenants shall run with the land and shall be binding upon all parties hereto and all persons claiming under them until January 1, 1960, at which time such covenants shall be automatically extended for successive periods of ten (10) years unless by a vote of the majority of the then owners of sites in said area it is agreed to change the said covenants in whole or in part.

*  *  *

H. Invalidation of any one or more of these covenants by judgment or decree of any court shall in no wise effect [sic] any of the other provisions which shall remain in full force and effect.

Plaintiffs own real property located on Houseman Lake. Defendants Clarence and Monica Reisig owned real property adjacent to plaintiffs' property. On April 15, 2001, the Reisigs executed a contract for the sale of their property to defendants William and Debra Hinkley. The Hinkleys were not landowners on Houseman Lake. On May 1, 2001, the Reisigs notified the Houseman Lake property owners of their land contract sale to the Hinkleys. On June 7, 2001, plaintiffs attempted to exercise their right of first refusal, tendering $500 and offering to purchase the property under the same terms as those provided in the Hinkleys' land contract. On June 26, 2001, the Reisigs returned plaintiffs' money and refused to sell them the property.

Plaintiffs instituted this litigation in August 2001. The circuit court initially granted the Reisigs' motion for summary disposition, concluding that the racially restrictive provision of the property owners' agreement

rendered the right of first refusal unenforceable. This Court affirmed the circuit court's ruling that the racially restrictive covenant was unenforceable. However, this Court concluded that, absent further evidence demonstrating that the right of first refusal was intended to circumvent prohibitions on the enforcement of racially restrictive covenants, the latter could be severed without undermining the enforceability of the former.[1] The Reisigs had conveyed their property to the Hinkleys on January 16, 2002. On remand, plaintiffs joined the Hinkleys as defendants in this action.

Defendants thereafter moved for summary disposition, contending that the right of first refusal is a property interest that is subject to the rule against perpetuities or, in the alternative, that the right of first refusal violates the general rule that first-refusal agreements must be for a definite period. The trial court granted summary disposition in favor of defendants, ruling that

> (a) if the rule against perpetuities applies, the right of first refusal as created in the Houseman Lake covenants is void, and (b) if the rule does not apply, the preemptive right must still comply with the legal principle of being in existence for a definite period of time which I determine is the original term of the covenants.

A right of first refusal, or preemptive right, is a conditional option to purchase dependent on the landowner's desire to sell. *Brauer v Hobbs,* 151 Mich App 769, 775-776; 391 NW2d 482 (1986); *Czapp v Cox,* 179 Mich App 216, 223; 445 NW2d 218 (1989). In *Brauer,* this Court stated that rights of first refusal must contain a definite time for performance. Such agreements are not void, however, merely because they lack a

---

[1] *Randolph v Reisig,* unpublished opinion per curiam of the Court of Appeals, issued September 2, 2003 (Docket No. 239666), slip op at 2-3.

specific time for performance. *Brauer, supra* at 777-778. Rather, in the absence of a specific time, courts will construe agreements "to be for a reasonable period of time," and, thus, such agreements are valid only for a reasonable period. *Id.* There is a strong tendency to construe an option of preemption to be limited to the lives of the parties " ' "unless there is clear evidence of a contrary intent." ' " *Id.* at 779 (citations omitted).

By its express and unambiguous terms, the property owners' agreement directs that it "shall run with the land" and shall bind the named individuals and "their heirs, successors, representatives and assigns . . . ." Further, the agreement provides that it shall continue to bind the owners and their successors until such time as its terms are modified. Cf. *Moore v Kimball*, 291 Mich 455, 457, 461-462; 289 NW 213 (1939) (holding that a covenant with a duration of 25 years was expressly terminated at the expiration of that period). Accordingly, unlike in *Brauer*, the right of first refusal in the present case indicates a clear intent that the right of first refusal run with the land and bind all heirs "until January 1, 1960, at which time such covenants shall be automatically extended for successive periods of ten (10) years" unless a majority of the then owners agreed to change the covenants. Nonetheless, the trial court determined that the renewal provision in the agreement providing a right of first refusal rendered the agreement one of indefinite duration that is subject to a reasonableness determination by the court.

Here, the unambiguous language of the agreement stated that it would continue "until January 1, 1960, at which time such covenants shall be automatically extended for successive periods of ten (10) years" unless a majority of the then owners agreed to change the covenants. There is nothing indefinite about the initial

term, and there is nothing indefinite about the succes-
sive terms. There is no authority for the trial court's
conclusion that the contract should be limited to the
original term of the covenant in the absence of the
specified condition. The trial court erred by concluding
that the renewal provision in the agreement trans-
formed the agreement into an agreement of indefinite
duration.

Plaintiffs also argue that the trial court erred by
determining that the right of first refusal in the agree-
ment is a property right subject to the rule against
perpetuities.[2] The Michigan statutory rule against per-
petuities that governs interests created between Sep-
tember 23, 1949, and December 27, 1988, provides as
follows:

> The common law rule known as the rule against perpe-
> tuities now in force in this state as to personal property
> shall hereafter be applicable to real property and estates
> and other interests therein, whether freehold or non-
> freehold, legal or equitable, by way of trust or otherwise,
> thereby making uniform the rule as to perpetuities appli-
> cable to real and personal property. [MCL 554.51.]

In *Hubscher & Son, Inc v Storey*, 228 Mich App 478,
482-483; 578 NW2d 701 (1998), this Court explained:

> The rule against perpetuities . . . [codified at MCL
> 554.51] is violated if, at the time the instrument creating a
> future estate comes into operation, it is not certain that the
> estate will either vest or fail to vest within twenty-one
> years of the death of a person named in the instrument.
> The rule applies only to nonvested property interests.
> [Citation omitted.]

An option contract does not create an interest in
land. A right of first refusal gives the promisee fewer

---

[2] Neither party disputes the characterization of the covenant as a right
of first refusal.

rights than an option contract. The promisee in an option contract holds the power to purchase the property at will for the specified price during the specified period. But the option contract does not create an interest in land. *Marina Bay Condominiums, Inc v Schlegel*, 167 Mich App 602, 607; 423 NW2d 284 (1988). Conversely, the promisee in a right of first refusal agreement cannot exercise any right to purchase property unless the seller decides to sell to a different buyer. Because the right of first refusal gives the holder fewer rights than an option, we conclude that if the latter does not create an interest in land, neither does the former. Indeed, Michigan courts have generally treated similar agreements containing first-refusal rights as contracts, not property interests, and have relied on the contractual nature of the first-refusal agreement in determining that it is not limited by the common-law rule against perpetuities. See *Windiate v Leland*, 246 Mich 659, 664-665; 225 NW 620 (1929) (the rule against perpetuities concerns rights in property only and does not affect the making of contracts that do not create rights in property).[3] The trial court erred by determin-

---

[3] Even assuming that the right of first refusal is a property right subject to the rule against perpetuities, the right of first refusal under consideration is within neither the purpose of nor the reason for the rule. This is not an exclusive option to buy at a fixed price that may be exercised at some remote time beyond the limit of the rule against perpetuities, meanwhile forestalling alienation. The right of first refusal simply gives an adjoining landowner the right to take the seller's interest at the same price the seller could secure from another purchaser whenever the seller desires to sell. It amounts to no more than a continuing and preferred right to buy at the market price whenever the seller desires to sell. This does not restrain free alienation by the seller. He or she may sell at any time, but must afford adjoining landowners a prior right to buy. An adjoining landowner cannot prevent a sale. His or her sole right is to accept or reject as a preferred purchaser when the seller is ready to sell. The right of first refusal is therefore not objectionable as a perpetuity. See, e.g., *Weber v Texas Co*, 83 F2d 807 (CA 5, 1936).

ing that the rule against perpetuities applied to the right of first refusal in the property owners' agreement.

Reversed and remanded. Jurisdiction is not retained.