*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARJORIE G. VIS,

          Plaintiff/Counterdefendant-Appellant,

v

JANIS GRATOWSKI, Personal Representative of the ESTATE OF VINCENT KLAMERUS,

          Defendant/Counterplaintiff/Third-Party Plaintiff-Appellee,

and

RUTH KLAMERUS,

          Defendant,

and

SIOUX MESSINGER, Trustee of the BARBARA D. BENTON REVOCABLE TRUST,

          Third-Party Defendant,

and

RICHARD MARTINS, Trustee of the MARTINS FAMILY LOVING TRUST,

          Third-Party Defendant-Appellant.

UNPUBLISHED
November 30, 2023

No. 362610
Chippewa Circuit Court
LC No. 21-016621-CH

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

-1-

In this real property dispute involving a right of first refusal, appellants, Marjorie Vis and Richard Martins,[1] appeal by delayed leave granted[2] the trial court's order ruling that the right of first refusal held by appellants[3] had been permanently waived and granting summary disposition in favor of defendant-appellee Janis Gratowski, as personal representative of the Estate of Vincent Klamerus. For the reasons set forth in this opinion, we affirm the trial court's ruling with respect to the contempt claim and dismiss as moot appellants' appeal of the trial court's ruling on the continued validity of the right of first refusal.

## I. BACKGROUND

The dispute in this action concerns a parcel of property on Drummond Island that has been the subject of previous litigation. The subject property, which does not have a residence on it, was owned by defendants Vincent and Ruth Klamerus in 2003. At that time, Vincent Klamerus and his excavating company, Vince Klamerus Excavating, LLC, were using the subject property for commercial purposes and mooring a tugboat and barge at the property. In 2003, Vis and other surrounding property owners brought suit in the Chippewa Circuit Court against the Klameruses and Klamerus Excavating, alleging that their use of the subject property violated certain deed restrictions that prohibited, among other things, using the subject property for commercial purposes. The 2003 lawsuit was resolved in 2005 through a consent judgment that contained terms and conditions relevant to the present appeal.

In general terms, the 2005 consent judgment permitted "Vincent Klamerus to continue to moor the tug and barge used in the contracting business, with limitations, for the duration of Vincent Klamerus' personal use and his involvement in such business." Further, it was "intended that this mooring right discontinue when Vincent Klamerus is no longer involved in such business, and it [was] therefore intended that this mooring use not continue with, or by, a subsequent owner of the barge or tug, subsequent owner of the business, subsequent owner of the lots described in Exhibit A or any lessee of the barge, or tug, or lots in question." These particular terms are not it issue in the current lawsuit.

However, the terms of the 2005 consent judgment also included a right of first refusal, and it is this right of first refusal that is at issue in the current litigation. In relevant part, the consent judgment provided as follows:

> 5. IT IS FURTHER ORDERED AND ADJUDGED that the Defendants [Vincent Klamerus, Ruth Klamerus, and Vince Klamerus Excavating, LLC,] shall provide all Plaintiffs [The Martins Family Loving Trust, Richard and Bernadine Martins, Marjorie George Vis, and Barbara Benson] with a Right of First Refusal, as attached in Exhibit D, to purchase the lot described therein, to be exercised at

---

[1] Martins is the trustee of the Martins Family Loving Trust.

[2] *Vis v Klamerus*, unpublished order of the Court of Appeals, entered February 6, 2023 (Docket No. 362610).

[3] The party designations in this action are complex because of the counterclaims and cross claims. For the sake of simplicity, we will refer to Vis and Martins collectively as "appellants."

any time that Defendants propose to convey any title, or transfer of the same to a third party. A transfer is exempt if it is to Defendants' children, children-in-law and grandchildren, to-wit: Janis Gratowski Janelle Klamerus, Nathan Klamerus, Wendy Boger and Scott Boger. However, any transfer from any of these named exempt parties to a third party shall be subject to Plaintiffs' Right of First Refusal.

\* \* \*

7. IT IS FURTHER ORDERED AND ADJUDGED that this judgment:

A. Runs with the land;

B. Is binding on all parties, successors, heirs, employees, transferees, and assigns;

C. Shall be recorded in Defendants' chain of title.

Exhibit D to the consent judgment provided that "Vincent Klamerus and Ruth Klamerus, husband and wife[,] . . . grant[ed] and convey[ed] to Marjorie Vis, . . . Barbara Benson . . . , and The Martins Family Loving Trust, Richard Martins, Trustee, . . . hereafter referred to as Grantees, a right of first refusal to purchase [the subject] real estate on Drummond Island, in Chippewa County, Michigan . . . ." The right of first refusal also contained the following relevant terms:

2. **Right of First Refusal.** Upon Grantor, or an Exempt Party's, proposed sale or transfer of any interest in the property, to a non-exempt party, as evidenced by a bona fide written offer for the purchase and sale of the same ("bona fide offer") signed by a proposed purchaser, each of the Grantees shall have the right to purchase the property on the same terms and conditions as set forth in said bona fide offer, with any such Grantee assuming all rights and responsibilities of the proposed purchaser as set forth in the bona fide offer, subject to Clause 4.

3. **Duration of Right of First Refusal.** This right of first refusal shall continue until the property has been conveyed to a bona fide non-exempt party, on the same terms and conditions, and under the same bona fide offer, that was waived by all Grantees of the right of first refusal. After the conveyance to a bona fide non-exempt purchaser and waiver by all Grantees, this right of first refusal shall be considered null and void. Any conveyance that is based on any other agreement than a bona fide offer, or any conveyance that varies in any way from the terms and conditions of a bona fide offer presented to Grantees, shall not extinguish Grantees' right of first refusal and said conveyance shall be null and void. If conveyed to any of the Exempt Parties, this right of first refusal shall continue and shall apply to any proposed sale or transfer of any interest by the exempt parties to any party. The only action that shall extinguish this right of first refusal shall be the waiver by all Grantees of a bona fide offer from a bona fide party that is accepted and conveyed under all terms and conditions as presented to Grantees.

4. **Procedure for Exercise.** Upon Grantor, or an Exempt Party's, receipt of a bona fide offer from a bona fide non-exempt party for the sale of the property,

the Grantor, or Exempt Party, shall send, by registered mail, a copy of said bona fide offer to each Grantee at the addresses listed below or any address that is corrected by the procedure set forth herein.

Grantee shall have 28 days from the date the registered mail entered the U.S. Postal Service system to notify Grantor, or Exempt Party, in writing, of their intent to exercise the right of first refusal. Said notice shall be sent to Grantor, or Exempt Party, by registered mail at the address listed below or any address that is corrected by the procedure set forth herein and be effective upon the date the registered mail entered the U.S. Postal Service. Failure to provide timely notice of the intent to exercise the right of first refusal shall be considered a permanent waiver of said right.

If the right of first refusal is timely exercised, all references to time of performance in the bona fide offer shall be extended by 28 days or shall be renewed as if the bona fide offer was signed by Grantees on the date of Grantees' notice to Grantor, or Exempt Party, of exercising the right of first refusal, whichever is longer.

This right of first refusal was recorded with the Chippewa County Register of Deeds on December 7, 2005.

At some point in early 2021,[4] Vincent Klamerus,[5] by warranty deed, conveyed the subject property along with three other parcels for $250,000 to Richard O. Rieck Sr. and Teresa Kay Rieck, Trustees of the Richard O. Rieck Sr. Trust.

On August 24, 2021, Richard O. Rieck Sr. and Teresa Kay Rieck, Trustees of the Richard O. Rieck Sr. Trust conveyed all four parcels, including the subject property, back to Vincent Klamerus by quitclaim deed. In the deed, it was explained that the earlier transaction between the parties was rescinded, with a return of the purchase money, because Vincent Klamerus had failed to honor the pre-existing right of first refusal. This deed was recorded on September 7, 2021.

Vis filed the instant action on September 27, 2021, against Vincent and Ruth Klamerus, and Richard Rieck Sr. and Teresa Rieck individually and as trustees of the Richard O. Rieck Sr. Trust. In the complaint, Vis alleged that the subject property had been conveyed without first providing notice to Vis of the proposed sale as required by the right of first refusal. The complaint also alleged that although the transaction conveying the property to the Riecks had been rescinded, the subject property was currently listed for sale. Vis maintained that her right of first refusal had been violated, and she sought declaratory relief declaring that the consent judgment and right of first refusal had been violated, a declaration that she retained a valid and enforceable right of first refusal, injunctive relief enjoining further violations, a finding that the Klamerus defendants were in contempt by violating the 2005 consent judgment willfully, and an award of damages.

---

[4] The deed was notarized on February 20, 2021 and recorded on March 2, 2021.

[5] Ruth Klamerus passed away in 2008.

In his answer, Vincent Klamerus admitted that he had sold the subject property without first giving notice to Vis, and he admitted that the Riecks were not exempt parties under the Right of First Refusal because they were not children, children in law, or grandchildren of the Klameruses. Vincent Klamerus further admitted that the sale to the Riecks was void and that the subject property was currently listed for sale. However, Vincent Klamerus claimed that in completing the transaction, he had relied on a title company that "provided a title commitment showing Defendant's title and ability to sell the subject parcels were free and clear of any encumbrances or interests superior to those of Richard O. Rieck and Teresa K. Rieck . . . ." Thus, Vincent Klamerus claimed that he had unknowingly violated the right of first refusal, and he further explained that he successfully arranged to rescind the transaction after learning of the violation. Additionally, "[p]rior to the reconveyance of the subject parcels, [Vincent Klamerus] provided valid notices to all potential Grantees through the Right of First Refusal, including offering a copy of the purchase agreement between [Vincent Klamerus] and the Riecks." Finally, the answer stated: "Defendant complied with the Right of First Refusal through certified mail to all potentially interested Grantees. No Grantee invoked the Right of First Refusal despite Defendant acknowledging the conveyance to the Riecks was void."

Vincent Klamerus also filed a counterclaim against Vis, essentially repeating the explanation of the sale to the Riecks that was included in his answer and further requesting that the trial court "enter a declaratory judgment that the right of first refusal, as it applies to Marjorie Vis, is terminated, together with costs and attorney fees." The counterclaim stated in relevant part:

> 5. The sale to Rieck occurred without providing notice to Vis, as required by the right of first refusal.

> 6. The omission by Klamerus, being that he failed to provide notice to Vis, was the result of the title company failing to note the right of first refusal even though the right of first refusal had been recorded in 2005.

> 7. Klamerus had no independent recollection of the right of first refusal other than what was disclosed by the title commitment.

> 8. Upon learning that the property was sold in violation of the right of first refusal, Klamerus acknowledged the mistake and proceeded to provide all owners of the right of first refusal, including Marjorie Vis, by registered mail, providing a copy of the purchase agreement offered by the Richard Rieck Trust and accepted by Klamerus. (See Exhibit 2).

> 9. More than 28 days have passed since the purchase agreement was provided to Marjorie Vis and Vis has failed to provide any notice that it intends to exercise its rights under the right of first refusal. Instead, Vis responded through an attorney. (See Exhibit 3).

> 10. The right of first refusal provides, in paragraph No. 5, "Failure to provide timely notice of the intent to exercise the right of first refusal shall be considered a permanent waiver of said rights".

Exhibit 2 to the counterclaim was a letter dated June 29, 2021, from counsel for Vincent Klamerus to attorneys apparently representing Vis and other holders of the right of first refusal for the subject property. The letter stated as follows:

RE: **Vince Klamerus, Marjorie Vis, Richard and Bernadine Martins and Sioux Messinger, Trustee of the Barbara D. Benson Revocable Living Trust**

Dear Ms. [Maggie] Steffy and Mr. [Christopher] Bzdok:

As you know, I represent Vincent Klamerus who conveyed real estate on Drummond Island to the Richard O. Rieck, Sr. Trust by way of a Warranty Deed dated February 20th, 2021. The property conveyed to the Rieck Trust included, in part, a parcel that I will refer to as the "Harbor Parcel" which is subject to a right of first refusal recorded at Liber 1004, page 4-6, Chippewa County Records. The conveyance also included three other parcels that adjoin the Harbor Parcel. The total purchase price was $250,000.

I acknowledge receiving copies of letters from both of you on behalf of your clients asserting their right of first refusal. Each of your letters stated that your client intended to assert their rights.

To remedy this situation, my client has made arrangements to refund the $250,000 purchase price to the Rieck Trust and to further compensate the Rieck Trust for its costs incurred. The Rieck Trust has tentatively agreed to then reconvey the property to my client.

Although each of you indicated in your letters that you would like to exercise your right of first refusal, the letter from Ms. Steffy specifically states an intent to purchase all of the property conveyed to the Rieck Trust for the price of $250,000. That is acceptable to Mr. Klamerus, but he, understandably, does not want to rescind his sale to the Rieck Trust until there is a binding purchase agreement with one or both of your clients.

I believe it is in all partie[s] [b]est interest to act promptly and, t[heref]ore, I am hereby providing notice to each of you of [illegible] bonafide offer my client received th[at] was obviously acceptable. Enclosed is a copy of the purchase agreement that my client accepted. The terms of the right of first refusal require that the grantee, within 28 days from the date the registered mail entered the US Postal Service system, to notify granter, in writing, of grantee's intent to exercise the right of first refusal.

I have every reason to anticipate one or both of your clients will exercise the right of first refusal, but I need to move the procedure forward.

I expect that your clients will exercise this right of first refusal and look forward to working cooperatively to effectuate the conveyance.[6]

Exhibit 3 to the counterclaim was a letter in response dated July 23, 2021, sent by William Bereza, an attorney with The Law Offices of David Carrier who was retained by Vis.[7] This letter was addressed to counsel for Vincent Klamerus and stated as follows:

This letter is to inform you that we have been retained by Marjorie Vis in this matter. We have reviewed your letter of June 29, 2021 and we intend to provide a further, more detailed response at a later date.

We also want you to note that we do not agree to the 28-day deadline from your initial letter. The June 29 letter is not a "bona fide written offer . . . signed by a proposed purchaser" such as would trigger a requirement for response within 28 days. The property has already been conveyed to the Rieck Trust, and the Right of First Refusal has already been breached. The Rieck Trust is also not a bona fide purchaser of the property, since they were on constructive notice of the Right of Refusal recorded prior to their purchase. A copy of this letter is being forwarded to the Trustee of the Rieck Trust.

Under the terms of the Right of First Refusal, "[a]ny conveyance that is based on any other agreement than a bona fide offer, or any conveyance that varies in any way from the terms and conditions of a bona fide offer presented to Grantees, shall not extinguish Grantees' right of first refusal and said conveyance shall be null and void." Your client does not have the right to demand a binding purchase agreement before rescission of the sale to the Rieck Trust.

Despite that, our client is willing to work with you and your client and with the Rieck Trust to cure this violation of her rights, and we look forward to working cooperatively with you to resolve this matter to the satisfaction of all parties. [Ellipsis and alteration in original.]

As the litigation progressed, Vincent Klamerus moved for summary disposition of Counts II and III of Vis's complaint, which were her claims for contempt and waste respectively. Vincent Klamerus first argued that Vis had not alleged a viable claim for contempt because the 2005 judgment did not prohibit him generally from selling the subject property to the Riecks. He further argued that although he violated the right of first refusal, he did not violate the court order requiring him to grant the right of first refusal, he attempted to cure the violation, and his actions thus did

---

[6] The record also contains two letters from attorneys Steffy and Bzdok, dated earlier in June, in which they informed Vincent's counsel that the property had been sold in violation of their clients' rights of first refusal. These letters also expressed an intent to exercise the rights of first refusal. It appears that the above quoted June 29 letter from Vincent's counsel was a response to these letters.

[7] Vis has different counsel representing her in this litigation.

not constitute contempt. Additionally, Vincent Klamerus argued that Vis had not alleged a viable claim for waste because a right of first refusal does not create an interest in land that would permit her to bring a claim for waste.

Vincent Klamerus moved to join the other grantees of the right of first refusal, Barbara Benson and Richard Martins, as Trustee of the Martins Family Loving Trust, as counterdefendants with respect to the counterclaim for a declaratory judgment regarding whether the right of first refusal remained in effect.

Vis responded by moving for summary disposition on Counts I and II of her complaint pursuant to MCR 2.116(C)(9) for failing to plead a valid defense to a claim. Vis argued that Vincent Klamerus had admitted in his answer each fact necessary to establish her entitlement to declaratory and injunctive relief based on his violation of the right of first refusal, as well as compensatory damages for contempt of court. Further, Vis argued that she was entitled to summary disposition under MCR 2.116(C)(8) with respect to the counterclaim because Vincent Klamerus's allegations, which included the admission that he had violated the right of first refusal, failed to state a claim on which relief could be granted. Vis withdrew her claim for waste in Count III of her complaint. Ruth Klamerus and the Rieck defendants were dismissed from the action by stipulation.

On February 17, 2022, the trial court held a hearing on the pending motions. Vincent Klamerus had passed away two days before the hearing. After hearing oral arguments, the trial court ruled as follows:

> Correct. So even if he did, let's assume just for the sake of argument that maybe he did commit a contemptible action, it's been cured because it wasn't sold. So I'm going to dismiss that count. I don't think there's any contempt violation here against Mr. Klamerus. He…should have known it.
>
> . . . clearly, he acknowledged it when he found out that he made that error or somebody caught it. He recognized it, rescinded the deal, and here we are. So, whether it's been waived or not, I don't know because I want to hear what happened after it was re—resubmitted to the parties, and that—we need the other parties for that action, I believe.
>
> So I don't know that it's been waived, but certainly, I'm not going to hold Mr. Klamerus or the estate now as he's deceased.

Accordingly, the trial court entered a written order dismissing Vis's claims for contempt and waste. The order also stated:

> Leave is hereby granted to Defendant Vincent R. Klamerus and/or his estate, to add party Defendants with regard to the issue of waiver of the right of first refusal, said added Defendants being Barbara D. Benson and Richard Martins, as Trustee of the Martins Family Loving Trust, or their successors in interest of real property that benefit from a right of first refusal recorded in Liber 1004, pages 4-6, Chippewa County Records. The intent of this order being to add the current owners of said benefited parcels to this suit.

Janis Gratowski,[8] as personal representative for the estate of Vincent Klamerus, subsequently filed a third-party complaint against Sioux Messinger, as Trustee of the Barbara D. Benton Revocable Living Trust, and Richard Martins, as Trustee of the Martins Family Loving Trust, seeking a declaratory judgment that the right of first refusal had been waived, and thus terminated, with respect to Vis because Vincent had provided the requisite notice and the purchase agreement to the grantees of the right of first refusal after acknowledging his violation in selling the property without first providing such notice, and more than 28 days had elapsed without any of the grantees indicating an intent to exercise their rights under the right of first refusal. Gratowski maintained that the right of first refusal had thus been waived pursuant to its express terms.

Vis and the third-party defendants, Messinger and Martins, subsequently filed a joint motion for summary disposition under MCR 2.116(C)(8) and (C)(9). In the motion, Vis, Messinger, and Martins (collectively the grantees) argued that the allegations in the countercomplaint failed to state a claim on which relief could be granted because Vincent Klamerus admitted that he sold the subject property without first honoring the grantees' right of first refusal. The grantees argued that the right of first refusal was not waived, explaining as follows:

> Klamerus's June 29, 2021 letter—issued months *after* Klamerus deeded the parcel to the Rieck Trust—could not trigger any obligation by the Rights Holders [i.e., the grantees], because it was not adequate notice under the RFR [right of first refusal] for at least three reasons: (1) the letter was sent after Klamerus had already deeded the parcel away; (2) the letter was never sent to the correct notice addresses in the RFR at all, but rather to the Rights Holders' former counsel in the 2003 lawsuit; and (3) the letter only offered the Rights Holders the chance to purchase four parcels together, not the one parcel subject to the RFR. Under these circumstances, no waiver of the RFR by the Rights Holders was possible, and none took place.

Gratowski responded by moving for summary disposition in favor of the estate of Vincent Klamerus. Gratowski argued that there were no disputed questions of fact and that the trial court should enter judgment declaring that the right of first refusal was waived and thus void as a matter of law. Gratowski argued as follows:

> Without question, the holders of the right of first refusal were properly sent a bonafide offer from a non-exempt party to buy the property. Without question, no holder provided any notice of intent to exercise their right to purchase. Without question, the failure to provide timely notice of intent to exercise constitutes a permanent waiver of the right of first refusal.

> The obvious purpose of a right of first refusal is to provide the Grantee with the option to purchase property for a price, and on terms, that are deemed acceptable to the Seller. In this case, the offer from Rieck was deemed acceptable to Klamerus. It was certainly bonafide as evidenced by the two parties actually closing the

---

[8] Gratowski is Vincent Klamerus's daughter.

transaction. However, the transaction was null and void. Therefore, Klamerus simply sent the same offer to Vis, Benson and Martins and gave them precisely what they had bargained for, an opportunity to buy the property on terms deemed acceptable to Seller. None of the holders of the right of first refusal responded to the offer within 28 days. On its terms, the right of first refusal was waived.

A hearing on the pending summary disposition motions was held on July 6, 2022, during which the parties made oral arguments consistent with their written filings. The trial court ruled from the bench that the Klamerus estate was entitled to summary disposition because the right of first refusal had been waived.

The trial court entered an order dismissing the case because the right of first refusal "has been permanently waived by all said grantees and is therefore, according to the terms of the right of first refusal, null and void." As previously stated, this Court granted leave to appeal.

## II. ANALYSIS

On appeal, appellants challenge the trial court's rulings that their respective rights of first refusal had been permanently waived and declining to find Vincent Klamerus in contempt. However, appellee's brief on appeal contained the following assertion, buried at the end of the brief:

Late in 2022 Mr. Klamerus' estate received another offer to buy only the covered parcel for $223,500.00. Notice, pursuant to the right of first refusal, was provided to all Appellants. All Appellants, through counsel, affirmatively declined, in writing, to exercise their rights. The sale went through and the title insurance company insured the buyer's title.

This recent development is not part of the record but is provided in support of Appellees' position that the waiver issue is moot as of this date. Count 1 of Plaintiffs Complaint seeks only declaratory and injunctive relief related to its interest in the covered parcel. Appellants no longer have any interest in the property and no purpose is served by declaratory or injunctive orders.

Despite the obvious significance of this development in light of the issues presented in this appeal, appellee did not seek to expand the record to include this evidence and appellants failed to address this development in their reply brief. We thus ordered appellee to provide this Court with all relevant documentary evidence showing that the subject property had been sold, that all grantees had been provided the opportunity to exercise their rights of first refusal, and that no grantee had exercised this right.[9] We also provided a timeframe for appellants to respond in order to challenge the documentary evidence and address whether this appeal was moot.[10]

---

[9] *Vis v Klamerus*, unpublished order of the Court of Appeals, entered October 24, 2023 (Docket No. 362610).

[10] *Id*.

In response to our order, appellee submitted a personal representative deed conveying the subject property to a third party, dated January 19, 2023, and recorded on January 26, 2023. Appellee also submitted evidence that on November 14, 2022, notice was provided to each of the grantees of the terms of the purchase offer and the grantees were given an opportunity to exercise their rights of first refusal. Finally, appellee provided an affidavit from counsel averring that none of the grantees had expressed an intention to purchase the subject property within the timeframe provided by the right of first refusal, as well as an email from counsel for the grantees indicating that the grantees had "not elected to purchase the Klamerus lot."

## A. RIGHT OF FIRST REFUSAL

A trial court's decision on a motion for summary disposition is reviewed de novo on appeal. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). Resolution of the issue before this Court involves the interpretation of the right-of-first refusal contained within the 2005 consent judgment. Interpreting the meaning of a court order presents a question of law that this Court reviews de novo. *Id*. at 460. Whether an issue is moot is also reviewed de novo. *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016).

"A right of first refusal, or preemptive right, is a conditional option to purchase dependent on the landowner's desire to sell." *Randolph v Reisig*, 272 Mich App 331, 336; 727 NW2d 388 (2006). A right of first refusal does not create an interest in land for the holder because "the promisee in a right of first refusal agreement cannot exercise any right to purchase property unless the seller decides to sell to a different buyer." *Id*. at 339. Instead, rights of first refusal are contractual in nature. *Id*.

Here, appellee has provided evidence that the subject property was sold during the pendency of this appeal to a third party after the grantees, including appellants in this appeal, declined to purchase the subject property after having been provided the opportunity to exercise their rights of first refusal. The right of first refusal expressly provided, "After the conveyance to a bona fide non-exempt purchaser and waiver by all Grantees, this right of first refusal shall be considered null and void." Since a right of first refusal is merely an option to purchase real property that is condition one the landowner's desire to sell, *id*. at 336, 339, and the property has been sold to a third party after appellants indicated a lack of interest in purchasing the property on the terms of the buyer's offer, there is no further relief that could be provided to appellants by declaring that the right of first refusal remained valid after the failed attempt by Vincent Klamerus to sell the subject property in 2021:[11] appellants were given an opportunity to purchase the subject property, and they declined.

Therefore, the issue whether the grantees waived the right of first refusal in 2021 has become moot. "It is universally understood by the bench and bar . . . that a moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then

---

[11] In light of our conclusion that the issue has been rendered moot by the 2023 sale, we express no opinion about whether the right of first refusal was waived relative to the attempted 2021 sale.

existing controversy." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 580; 957 NW2d 731 (2020) (quotation marks and citation omitted; ellipsis in original). An issue is moot when "it presents only abstract questions of law that do not rest upon existing facts or rights" or "an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "As a general rule, an appellate court will not decide moot issues." *Id*.

Appellants have failed to rebut the evidence provided by appellees demonstrating the waiver of the right of first refusal relative to the 2023 sale. Although appellants complain that the subject property was not conveyed on the same terms as those provided in the notice sent by appellee in November 2022 because the final transaction apparently included additional adjacent parcels for an accordingly greater total purchase price, that does not negate that the grantees were provided the option to purchase the subject parcel on the same terms specific to the conveyance of that particular parcel. Appellants have not provided any evidence that the terms specifically relative to the subject parcel changed, nor have appellants provided any evidence that they held any rights of first refusal with respect to the additional parcels that were conveyed along with the subject property. We thus conclude that this issue is moot.

## B. CONTEMPT

Appellants[12] maintain, however, that they are still entitled to compensatory damages, pursuant to MCL 600.1701(g) and MCL 600.1721, because Vincent Klamerus's actions in 2021 constituted contempt of the 2005 judgment. Appellants maintain that the trial court erred by dismissing the contempt claim.

A trial court's decision on a motion for summary disposition is reviewed de novo on appeal. *In re Bradley Estate*, 494 Mich 367, 376; 835 NW2d 545 (2013). Nonetheless, "[t]his Court reviews a trial court's decision regarding a contempt motion for an abuse of discretion." *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007). The "trial court's factual findings are reviewed for clear error and questions of law are reviewed de novo." *Porter v Porter*, 285 Mich App 450, 455; 776 NW2d 377 (2009). "A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 386; 853 NW2d 421 (2014). "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Id*. at 386-387 (quotation marks and citation omitted).

Under MCL 600.1701(g), the trial court has the "power to punish by fine or imprisonment, or both . . . [p]arties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court." Additionally, MCL 600.1721 provides as follows:

---

[12] It seems that the contempt claim is specific to Vis and her original complaint. However, appellants have filed a single, combined brief. We thus refer generally to appellants, while recognizing that this particular claim may only pertain to Vis.

> If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

As appellants concede on appeal, compensatory relief under MCL 600.1721 is a civil contempt sanction. *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 499; 608 NW2d 105 (2000); see also *Porter*, 285 Mich App at 455-456 ("[T]here are two types of civil contempt sanctions, coercive and compensatory.") (quotation marks and citation omitted). "Proceedings for civil contempt are instituted to preserve and enforce the rights of private parties to suits and to compel obedience of orders and decrees made to enforce those rights and administer the remedies to which the court has found the parties are entitled." *In re Contempt of United Stationers Supply*, 239 Mich App at 500. "A court may issue an order to pay compensation for actual loss or injury caused by a contemnor's misconduct." *Id*.

In challenging the trial court's dismissal of the contempt count, appellants argue on appeal that the trial court failed to provide its reasoning for its decision. However, the trial court expressly stated that it was dismissing the contempt count because even assuming that Vincent committed "a contemptible action," it had been "cured." "Civil contempt is generally imposed for the purpose of compelling the contemnor to comply with a court's order, and the contemnor has the ability to cure the contempt with that compliance." *In re Contempt of Pavlos-Hackney*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357407); slip op at 14. "Civil contempt may also serve the purpose of reimbursing a complainant who incurred costs because of the contempt . . . ." *Id*. Thus, "[i]n civil contempt proceedings, a trial court employs its contempt power to coerce compliance with a present or future obligation, including compliance with a court order, to reimburse the complainant for costs incurred as a result of contemptuous behavior, or both." *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012) (opinion by K.F. KELLY, J.). "[C]ivil contempt sanctions are viewed as nonpunitive and avoidable . . . ." *Id*. at 332 (quotation marks and citation omitted).

Here, appellants completely fail to address the trial court's stated reason for dismissing the contempt count. Instead, appellants mischaracterize the record and assert that the trial court did not provide any reasoning. "It is not enough for an appellant to simply announce a position or assert an error in his or her brief and then leave it up to this Court to discover and rationalize the basis for the claims, or unravel and elaborate the appellant's arguments, and then search for authority either to sustain or reject the appellant's position." *DeGeorge*, 276 Mich App at 594-595. Accordingly, appellant has abandoned their argument by failing to "adequately develop [her] argument and cite legal authority to sustain [her] position."

Furthermore, even if we were to consider the trial court's ruling on the merits, the trial court's ruling declining to hold Klamerus liable for contempt in light of the extensive steps he took to cure the violation and provide the grantees with a right of first refusal to purchase the subject property—steps he took before Vis initiated this litigation—was not outside the range of principled outcomes and was thus not an abuse of discretion. *DeGeorge*, 276 Mich App at 591.

-13-

Affirmed. Given that the parties failed to adequately apprise this Court of the status of the right of first refusal, coupled with the lack of coherent and legally supported arguments in their briefs, no costs are awarded to any party. MCR 7.219(A).

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick